IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MATTHEW DONAHUE,

    Plaintiff,

v.

VILLAGE OF ELM GROVE,
VILLAGE MANAGER DAVID DEANGELIS,

VILLAGE OF ELM GROVE FIRE DEPARTMENT,
INTERIM FIRE CHIEF DAVID KASTENHOLZ,
DEPUTY CHIEF BRUCE RATAY,
BATTALION CHIEF BRIAN NAYLOR,

ELM GROVE POLICE AND FIRE COMMISSION,
COMMISSIONER BOB HAUGH,
COMMISSIONER DAVID MOLTER,
COMMISSIONER ALLAN KASPRZAK, and
COMMISSIONER GUS MOULAS,

    Defendants.

CIVIL ACTION NO. 21 CV 765
JURY TRIAL DEMANDED

## COMPLAINT

NOW COME the Plaintiff, Matthew Donahue ("Donahue"), by and through his attorneys, McDonald & Kloth, LLC, and as and for his Complaint against the Defendants, Village of Elm Grove (the "Village"), Village Manager David DeAngelis ("DeAngelis"), Village of Elm Grove Fire Department (the "Fire Department"), Interim Fire Chief David Kastenholz ("Kastenholz"), Deputy Chief Bruce Ratay ("Ratay"), Battalion Chief Brian Naylor ("Naylor"), Elm Grove Police and Fire Commission (the "Commission"), Commissioner David Molter ("Molter"), Commissioner Allan Kasprzak ("Kasprzak"), and Commissioner Gus Moulas ("Moulas") allege as follows:

1

## NATURE OF ACTION

1. This action arises under 42 U.S.C. § 1983 and the First Amendment to the United States Constitution, Wisconsin Statute § 230.90, and the common law of the State of Wisconsin. Plaintiff asserts that Defendants subjected him to disciplinary action and termination in retaliation for exercising his constitutional right to the freedom of speech. Plaintiff further asserts that Defendants engaged in abuse of process and malicious prosecution. Plaintiff seeks reinstatement, lost pay, lost benefits, consequential damages, compensatory damages, punitive damages, litigation costs, and attorney's fees.

## PARTIES

2. Plaintiff Matthew Donahue is an adult resident of the State of Washington with a residence located at 14160 Ridgewood Road, Brookfield, Wisconsin 53005.

3. Defendant Village of Elm Grove is a municipal corporation organized under the laws of the State of Wisconsin with a principal place of business located at 13600 Juneau Blvd., Elm Grove, Wisconsin 53122.

4. Defendant David DeAngelis is and was at all times material to this cause of action an adult resident of the State of Wisconsin and the Village Manager for the Village of Elm Grove.

5. Defendant Village of Elm Grove Fire Department is a volunteer fire department organized under the laws of the State of Wisconsin with a principal place of business located at 13600 Juneau Blvd., Elm Grove, Wisconsin 53122.

6. Defendant Interim Fire Chief David Kastenholz is and was at all times material to this cause of action an adult resident of the State of Wisconsin and an employee of the Village of Elm Grove Fire Department.

7. Defendant Deputy Chief Bruce Ratay is and was at all times material to this cause of action an adult resident of the State of Wisconsin and an employee of the Village of Elm Grove Fire Department.

8. Defendant Battalion Chief Brian Naylor is and was at all times material to this cause of action an adult resident of the State of Wisconsin and an employee of the Village of Elm Grove Fire Department.

9. Defendant Elm Grove Police & Fire Commission is a board of commissioners organized under the laws of the State of Wisconsin with a principal place of business located at 13600 Juneau Blvd., Elm Grove, Wisconsin 53122.

10. Commissioner Bob Haugh is and was at all times material to this cause of action an adult resident of the State of Wisconsin and a commissioner on the Elm Grove Police and Fire Commission.

11. Commissioner David Molter is and was at all times material to this cause of action an adult resident of the State of Wisconsin and a commissioner on the Elm Grove Police and Fire Commission.

12. Commissioner Allan Kasprzak is and was at all times material to this cause of action an adult resident of the State of Wisconsin and a commissioner on the Elm Grove Police and Fire Commission.

13. Commissioner Gus Moulas is and was at all times material to this cause of action an adult resident of the State of Wisconsin and a commissioner on the Elm Grove Police and Fire Commission.

## JURISDICTION AND VENUE

14. This court has subject matter jurisdiction under 28 U.S.C. § 1331 as to Donahue's First Amendment Retaliation claim because this claim arises under the Constitution of the United States.

15. This court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all other claims arise in and are so related that they form part of the same case or controversy as the aforementioned claims.

16. The Eastern District of Wisconsin has personal jurisdiction over Defendants because Defendants' principal places of business are located within the District and Defendants perform substantial business within the District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

18. Donahue was employed as a Volunteer Firefighter by the Village of Elm Grove Fire Department from March 4, 2014 through August 31, 2020.

19. On March 6, 2019, one Elm Grove Police Department ("EGPD") officer and one Brookfield police officer arrived at Donahue's residence to question him about a complaint EGPD had received from Father Peter Berger ("Berger") of St. Mary's Church.

20. Donahue was a member of St. Mary's Church and recently had been married at the Church by Berger. Donahue and Berger had exchanged email correspondence prior to and on March 6, 2019 regarding a personal issue between the Church and Donahue. Berger contacted EGPD following the email exchange which resulted in the EGPD and Brookfield officers visiting Donahue on March 6, 2019.

21. EGPD Officer Jamie Hawkins ("Officer Hawkins") led the discussion at Donahue's home on March 6, 2019.

22. Officer Hawkins was rude, unprofessional, and did not explain why he was questioning Donahue. Officer Hawkins also lied to Donahue and made unsupported accusations against Donahue.

23. Despite Officer Hawkins's unprofessional conduct, Donahue answered the officer's questions.

24. Officer Hawkins asked Donahue to have no contact with the Church, and Donahue asked Officer Hawkins to convey the same no-contact order to the Church. Although Officer Hawkins indicated that he would issue the same no-contact order to the Church, Donahue later learned that this never occurred.

25. Donahue was not issued a citation or charged with any wrongdoing in connection with this meeting.

26. After the officers left Donahue's home, Donahue noticed that he had missed one or more calls from EGPD Officer Jason Hennan ("Officer Hennan").

27. Donahue returned Officer Hennan's call to lodge an internal complaint against Officer Hawkins but the call went unanswered.

28. Donahue connected with Officer Hennan the following day, March 7, 2019, and was able to discuss the March 6, 2019 issue with Officer Hennan. Donahue expressed his frustrations and concerns with the manner in which Officer Hawkins had conducted himself the previous day.

29. Officer Hennan asked Donahue how Donahue would like to "resolve" the situation to which Donahue indicated that an apology would suffice.

30. Officer Hennan became upset and said "that's not how this conversation is going to go" or words to that effect.

31. Officer Hennan stated that he was "just going to cite [Donahue]" or words to that effect.

32. Donahue indicated that Officer Hennan could leave the citation in his fire locker to which Officer Hennan responded that he would "grab" Donahue from a fire meeting to issue the citation.

33. Chief James Gage of the EGPD later told Donahue that Donahue would be arrested for the citation.

34. Officer Preston Noble ("Officer Noble") later delivered the citation to Donahue. The citation was dated March 5, 2019, signed by Officer R. Unger.

35. On March 26, 2019, Donahue and his wife went to the EGPD to file a formal complaint against Berger and the Church because the Church continued to withdraw money from Donahue's personal bank account without authorization and was in violation of the no-contact order that Officer Hawkins allegedly had issued to the Church.

36. Officer Preston Noble indicated that he would take the complaint but refused to allow Donahue's wife, a co-complainant and witness to the matter complained of, to meet with Donahue and Officer Noble to make the complaint.

37. Donahue asked if there was a law against two people making a complaint to which Officer Noble said "yes."

38. Donahue indicated that he wanted to make it clear that he wanted his wife to join him in making the complaint. Officer Noble replied, "noted," and proceeded to take Donahue into another room while making Donahue's wife sit in the foyer.

39. Donahue later contacted the EGPD to inquire as to the status of the complaint against Berger and spoke with Chief Gage. Chief Gage refused to question Berger about Donahue's complaint and refused to tell the Church to cease deducting money from Donahue's personal bank account without authorization.

40. Donahue later learned that Chief Gage directed the investigator assigned to Donahue's complaint to not investigate the complaint.

41. Donahue was blindsided and shocked by the EGPD's unethical, unprofessional, and unlawful conduct and decided to file a formal Statement of Charges with the Commission against the officers to bring attention to the glaring problem.

42. Donahue's Statement of Charges set forth in detail the legal, professional, regulatory, and ethical issues exhibited by Chief Gage and Officers Hawkins, Hennen, and Noble.

43. The Statement of Charges included the officers' inappropriate conduct described in paragraphs 19 – 40, above.

44. The Commission sent Donahue a letter on Village letterhead confirming its receipt of the Statement of Charges. The Commission took no action in response to the charges and told Donahue that the Commission could not investigate the matter. The Commission directed Donahue to file the charges with the Village Board of Trustees if he wanted an investigation of the charges.

45. In accordance with the Commission's direction, Donahue filed the same complaints with the Village of Elm Grove Board of Trustees (the "Board"), on January 16, 2020.

46. Village Manager DeAngelis issued a memo dated January 20, 2020 to the Board advising the Board of Donahue's complaint. DeAngelis memo confirmed that the complaint fell within the auspices of the Chief of Police and DeAngelis, the Chief's direct administrative superior.

47. DeAngelis's memo advised against investigating Donahue's complaints, made several false accusations against Donahue, and misrepresented facts concerning Donahue's underlying complaints.

48. DeAngelis's memo concluded with an instruction to the Fire Department to open an investigation into Donahue.

49. On February 21, 2020, William Selzer ("Selzer"), Fire Chief for the Elm Grove Fire Department, placed Donahue on paid administrative leave pending the Fire Department's investigation "involving [Donahue's] conduct relating to several matters including disturbances you have been involved in and your interactions involving your fellow Village public safety professionals."

50. Selzer "ordered [Donahue] not to enter the Fire Department premises or any non-public areas of the Village without permission from [Selzer] or Village Manager Dave De Angelis…[and] ordered to not engage in attending any trainings, meetings, or calls without permission from [Selzer]."

51. Selzer and Donahue exchanged several email communications to schedule a time for the Fire Department to obtain information from Donahue for the Department's investigation. The primary scheduling problem was that the COVID-19 Pandemic had just surfaced in the United States and a Safer at Home Order was instituted in Wisconsin.

52. Donahue requested to provide information by email or other remote means because of the global pandemic and the fact that he, his wife, and young child fell into several very high-risk categories. Donahue also requested documentation from the Fire Department to assist in the investigation including, but not limited to, "all complaints against members of the fire department during your tenure as chief and your report on them."

53. Despite Donahue's request to conduct the interview remotely for safety concerns, Selzer continued to demand an in-person interview under threat of disciplinary action and termination.

54. On May 17, 2020, for the first time since opening an investigation into Donahue, the Fire Department confirmed that the "focus" of the investigation was on the "charges and complaints [Donahue] filed against members of the Police Department."

55. Selzer's May 17th email also informed Donahue that instead of the interview being conducted by a single Department employee (which was the customary

9

Case 2:21-cv-00765-PP   Filed 06/21/21   Page 9 of 16   Document 1

procedure), Donahue's in-person interview would be conducted by Selzer, Assistant Chief Kastenholz, Deputy Chief Ratay, and Battalion Chief Naylor. Selzer also notified Donahue that he had requested "Village Attorney Kyle Gulya" to attend the interview and that the interview would be videotaped.

56. Donahue responded to Selzer agreeing to answer questions by email, agreeing to answer questions by telephone, and agreeing to a mediation to further flesh out any questions the Fire Department had regarding his complaints against the officers.

57. Donahue further confirmed that if the Department refused those options, he would appeal the Department having placed him on administrative leave and subjecting him to restrictions. Donahue explained, "In that case, no interview is required and per Fire Commission Rules and Regulations you must either file charges, in a timely manner, or release me from the leave and any other restrictions you have placed on me."

58. Selzer responded by email denying all of Donahue's proposed means of conducting the interview. Selzer again demanded an in-person interview conducted by all the chiefs (rather than by one chief, as was the normal procedure).

59. Donahue responded on the same day indicating that he had filed his appeal of the Department's decision to place him on administrative leave.

60. Donahue's appeal was rejected.

61. Donahue sent an email to Chief Kastenholz the following day indicating that he's still available to conduct the interview and still waiting for the Department to produce information to assist with the investigation.

62. On June 26, 2020, the Fire Department filed its Statement of Charges against Donahue with the Commission. The Fire Department had not interviewed Donahue prior to filing charges.

63. Donahue communicated to the Commission that he had experienced "inappropriate and unprofessional actions" by the law firms representing the Village and Commission. Donahue also requested a telephonic hearing to discuss administrative matters. Donahue's request was denied.

64. The Commission proceeded with the Hearing on the Village's Statement of Charges against Donahue on August 14, 2020. Donahue was not present for the hearing because he had not received notice of the hearing.

65. The Commission issued a Decision and Order on the Disciplinary Charges against Donahue on or about August 26, 2020. The Commission determined there was "just cause" to terminate Donahue's employment with the Fire Department under Wis. Stat. § 62.13(5)(e) and (em).

66. The Fire Department sent Donahue a letter dated August 26, 2020 advising him that the Commission had conducted a hearing on the disciplinary charges brought against him on August 14, 2020 and terminated his employment as of August 14, 2020.

67. Donahue appealed the Commission's decision to the State of Wisconsin Circuit Court, Waukesha County, on September 4, 2020, Circuit Court Case No. 2020CV001258. Donahue's appeal involved Wisconsin Statute § 62.13(5)(j). The Court later amended the case to include a petition for review by certiorari.

68. Donahue served the Defendants with a Notice of Claim pursuant to Wis. Stat. §§ 893.80 and 893.82 on December 10, 2020.

69. Donahue received a notice of denial of claim from the Defendants, dated February 22, 2021.

## LEGAL CLAIMS

## COUNT I

### FIRST AMENDMENT RETALIATION

70. Donahue incorporates paragraphs 1 through 69 as if fully set forth herein.

71. Donahue's complaints against the EGPD Officers regarding their unethical, unprofessional, and unlawful conduct in the performance of their official police duties were expressions of public interest and concern, and thus protected by the First Amendment to the Constitution of the United States of America.

72. The actions of the Village, DeAngelis, Fire Department, Interim Chief Kastenholz, Deputy Chief Ratay, Battalion Chief Naylor, the Commission, Commissioner Haugh, Commissioner Molter, Commissioner Kasprzak, and Commissioner Moulas were designed to punish and/or retaliate against Donahue for having expressed his complaints, opinions, and concerns in violation of the First Amendment.

73. The actions of the Defendants had the effect of chilling the rights of free speech belonging to employees such as Donahue.

74. If not checked, the Defendants' conduct would serve to prevent and preclude others from questioning and/or complaining about misconduct by police officers.

75. Donahue has incurred substantial damages as a direct result of the Defendants' unlawful conduct.

## COUNT II

## VIOLATION OF WISCONSIN STATUTE § 230.90

76. Donahue incorporates paragraphs 1 through 69 as if fully set forth herein.

77. Donahue complained to the Village, Commission, and Fire Department about mismanagement or abuse of authority by the EGPD officers.

78. The Village, Commission, and Fire Department disciplined and terminated Donahue because he exercised his rights under the First Amendment to the Constitution of the United States and/or Article I, Section 3 of the Wisconsin Constitution.

79. Donahue has incurred substantial damages as a result of the Defendants' violation of Wis. Stat. § 230.90.

## COUNT III

## ABUSE OF PROCESS

80. Donahue incorporates paragraphs 1 through 69 as if fully set forth herein.

81. The Village used legal process against Donahue to obtain a collateral advantage associated with Donahue's complaints against the EGPD Officers.

82. The citation issued by the EGPD was made in retaliation for Donahue's complaints against the EGPD Officers and was intended to stop Donahue from pursuing his complaints against the Officers.

83. When Donahue did not stop pursuing his complaints against the EGPD Officers, the Village instructed the Fire Department to investigate Donahue. This directive was made with the intent to make Donahue stop pursuing his complaints against the EGPD Officers.

84. When Donahue still did not stop pursuing his complaints against the EGPD Officers, the Village escalated the matter to terminating Donahue's employment.

85. Had Donahue not complained about the EGPD Officers' misconduct, he would not have been issued a citation.

86. Had Donahue not pursued his complaints about the EGPD Officers' misconduct, the Village would not have opened an investigation into Donahue.

87. Had Donahue not continued to pursue his complaints against the EGPD Officers, the Village would not have terminated Donahue's employment.

88. Defendants used the legal process to stop Donahue's complaints.

89. Defendants used valid legal process against Donahue to accomplish a purpose for which the process is not designed.

90. Donahue has incurred substantial damages as a result of the Defendants abusing civil and criminal processes.

## COUNT IV

## MALICIOUS PROSECUTION

91. Donahue incorporates paragraphs 1 through 69 as if fully set forth herein.

92. The Village instituted legal action against Donahue in the form of the disorderly conduct citation.

93. The Village instituted legal action against Mr. Donahue to secure the termination of his employment.

94. The Village was successful in levying the disorderly conduct citation against Donahue and securing Donahue's termination from the Fire Department.

95. The Village carried out its actions with malice in an effort to protect the dishonest, unethical, and possibly unlawful conduct of the EGPD Officers.

96. There were no grounds for the Village to institute the citation or termination proceedings.

97. Donahue has suffered financially, emotionally, and physically as a proximate cause of the Village's conduct.

## **PRAYER FOR RELIEF**

A. Order Village of Elm Grove Fire Department to reinstate Donahue with full seniority and benefits.

B. Order Defendants to pay Donahue appropriate back pay, lost benefits, and out of pocket costs.

C. Order Defendants to pay Donahue compensatory damages.

D. Order Defendants to pay Donahue punitive damages.

E. Order Defendants to pay Donahue's attorney's fees and costs.

F. Order such other relief deemed just and equitable by the Court.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Dated this 21st day of June, 2021.

        **MCDONALD & KLOTH, LLC**
        Attorneys for Plaintiff


      By: s/Shannon D. McDonald
        Shannon D. McDonald
        WI Bar No. 1036954

MCDONALD & KLOTH, LLC
N96W18221 County Line Rd. #200
Menomonee Falls, WI 53051
262-252-9122 (Office)
262-252-9123 (Direct)
414-395-8773 (Fax)
sdm@themklaw.com