UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MATTHEW DONAHUE,

        Plaintiff,

                                   Case No. 21-cv-765-pp

    v.

VILLAGE OF ELM GROVE,
VILLAGE OF ELM GROVE FIRE DEPARTMENT,
VILLAGE OF ELM GROVE POLICE AND FIRE COMMISSION,
DAVID DEANGELIS, DAVID KASTENHOLZ, BRUCE RATAY,
BRIAN NAYLOR, BOB HAUGH, DAVID MOLTER,
ALLAN KASPRZAK and GUS MOULAS,

        Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS (DKT. NO. 27); DISMISSING DEFENDANTS VILLAGE
OF ELM GROVE, VILLAGE OF ELM GROVE POLICE AND FIRE
COMMISSION, KASTENHOLZ, RATAY, NAYLOR, HAUGH, MOLTER,
KASPRZAK AND MOULAS; DISMISSING COUNTS THREE AND FOUR AND
REQUIRING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

       On June 21, 2021, the plaintiff, a volunteer firefighter in the Village of

Elm Grove, filed a complaint asserting claims under 42 U.S.C. §1983 and the

First Amendment, as well as under Wis. Stat. §230.90 and state common law.

Dkt. No. 1. The defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6).

Dkt. No. 27.

       The court will deny the defendants' motion to the extent that it asks the

court to dismiss the case for lack of subject-matter jurisdiction, but will grant

the Rule 12(b)(6) motion as to all but two of the defendants and two of the

claims. The court will order the plaintiff to file an amended complaint

1

consistent with the court's ruling; if the defendant answers the amended complaint, the court will set a schedule to keep the case moving forward.

## I.    The Complaint

The complaint alleges that the plaintiff is a resident of the state of Washington with a residence in Brookfield, Wisconsin. Dkt. No. 1 at ¶2. Defendant Village of Elm Grove is a municipal organization and David DeAngelis serves as the village manager. Id. at ¶¶3, 4. The Village of Elm Grove Fire Department is a volunteer fire department. Id. at ¶5. Interim Fire Chief David Kastenholz, Deputy Chief Bruce Ratay and Battalion Chief Brian Naylor are employees of the fire department. Id. at ¶¶6-8. The Elm Grove Police and Fire Commission is a board of commissioners; Bob Haugh, David Molter, Allan Kasprzak and Gus Moulas are commissioners. Id. at ¶¶9, 10-13.

From March 4, 2014 through August 31, 2020, the plaintiff was employed as a volunteer firefighter by the Village of Elm Grove Fire Department. Id. at ¶18. He alleges that on March 6, 2019, he was questioned by officers from the Elm Grove and Brookfield Police Departments about a complaint the Elm Grove P.D. had received from Father Peter Berger of St. Mary's Church. Id. at ¶19. The plaintiff was a member of St. Mary's congregation; recently Father Berger had officiated at the plaintiff's marriage and on March 6, 2019, the two had exchanged emails regarding a personal issue "between the Church and [the plaintiff]." Id. at ¶20. The plaintiff asserts that after the email exchange, Father Berger contacted the Elm Grove Police

2

Department, "which resulted in the [Elm Grove Police Department] and Brookfield officers visiting [the plaintiff] on March 6, 2019." Id.

The plaintiff alleges that Elm Grove police officer Jamie Hawkins "was rude, unprofessional, and did not explain why he was questioning [the plaintiff]." Id. at ¶22. He alleges that "Officer Hawkins . . . lied to [the plaintiff] and made unsupported accusations against [the plaintiff]." Id. According to the plaintiff, Hawkins asked the plaintiff to have no contact with the church. Id. at ¶¶23-24. The plaintiff says that he asked Hawkins to "convey the same no-contact order to the Church," but the plaintiff says he later learned that "this never occurred." Id. at 24. The plaintiff avers that he was not issued any citations or charged in connection with this meeting. Id. at ¶25.

The plaintiff alleges that after the officers left his home, he discovered that he had missed one or more phone calls from another Elm Grove police officer, Jason Hennan. Id. at ¶26. He says that he tried to return Hennan's phone call with the intention of lodging an internal complaint against Hawkins, but that the call "went unanswered." Id. at ¶27. The plaintiff "connected with" Hennan the next day (March 7, 2019) and discussed with Hennan what had happened on March 6, 2019; the plaintiff says that he expressed frustration and concern about how Hawkins "had conducted himself." Id. at ¶28. The plaintiff asserts that Hennan asked him how the plaintiff wanted to "resolve" the situation, and the plaintiff replied that "an apology would suffice." Id. at ¶29. The plaintiff says that Hennan "became upset," and said something to the effect of "that's not how this conversation is going to go." Id. at ¶30. The

3

plaintiff avers that Hennan said that he was "just going to cite [the plaintiff]," or something like that. Id. at ¶31. The plaintiff avers that he told Hennan to "leave the citation in [the plaintiff's] fire locker" and Hennan allegedly replied that he "would 'grab' [the plaintiff] from a fire meeting to issue the citation." Id. at ¶32. The plaintiff alleges that Elm Grove Police Chief James Gage later told the plaintiff that he "would be arrested for the citation." Id. at ¶33. The plaintiff asserts that another officer, Preston Noble, delivered a citation dated March 5, 2019 and signed by Officer R. Unger to the plaintiff. Id. at ¶34.

The plaintiff alleges that on March 26, 2019, he and his wife went to the Elm Grove Police Department to file a complaint against Father Berger and the church, because the church "continued to withdraw money from [the plaintiff's] personal bank account without authorization and was in violation of the no-contact order that Officer Hawkins allegedly had issued to the Church." Id. at ¶35. The plaintiff asserts that Officer Noble said he would take the complaint "but refused to allow [the plaintiff's] wife, a co-complainant and witness to the matter complained of, to meet with [the plaintiff] and Officer Noble to make the complaint." Id. at ¶36. The plaintiff claims that when the plaintiff asked whether there was a law against two people making a complaint, Noble said "yes." Id. at ¶37. The plaintiff says that he "wanted to make it clear that he wanted his wife to join him in making the complaint," and that Noble responded, "noted," then "proceeded to take [the plaintiff] into another room while making [the plaintiff's] wife sit in the foyer." Id. at ¶38.

4

The plaintiff explains that "later," he contacted the Elm Grove Police Department to ask about the status of the complaint against Father Berger and spoke with Chief Gage. <u>Id.</u> at ¶39. The plaintiff alleges that "Chief Gage refused to question Father Berger about [the plaintiff's] complaint and refused to tell the Church to cease deducting money from [the plaintiff's] personal bank account without authorization." <u>Id.</u> The plaintiff says that he later learned that Gage had directed the investigator assigned to the plaintiff's complaint not to investigate it. <u>Id.</u> at ¶40. He asserts that he was "blindsided and shocked" by the police department's "unethical, unprofessional, and unlawful conduct," so he decided to file a "formal Statement of Charges with the Elm Grove Police and Fire Commission against the officers to bring attention to the glaring problem." <u>Id.</u> at ¶41. The plaintiff says that the statement of charges "set forth in detail the legal, professional, regulatory, and ethical issues exhibited by Chief Gage and Officers Hawkins, Hennen[1] and Noble," including the conduct the plaintiff describes in his federal complaint. <u>Id.</u> at ¶¶42-43. The plaintiff alleges that the commission sent him a letter on Village letterhead, confirming receipt of the charges, but that it took no action and told the plaintiff that the commission "could not investigate the matter." <u>Id.</u> at ¶44. The plaintiff avers that the commission "directed" him to file the charges with the village board of trustees if he wanted an investigation. <u>Id.</u> The plaintiff asserts that on January 16,

---

[1] In some places, the complaint spells this officer's name "Henn*a*n," while in others it is spelled "Henn*e*n."

2020, he did just that, filing the same complaints with the Village of Elm Grove Board of Trustees. Id. at ¶45.

The plaintiff asserts that in a January 20, 2020 memo to the board of trustees, DeAngelis (the village manager) "confirmed" that the complaint "fell within the auspices of the Chief of Police and DeAngelis, the Chief's direct administrative superior." Id. at ¶46. The memo allegedly advised the board against investigating the plaintiff's complaints and "made several false accusation against [the plaintiff], [] misrepresented facts concerning [the plaintiff's] underlying complaint" and instructed the fire department to open an investigation into the plaintiff. Id. at ¶¶47-48. The plaintiff says that on February 21, 2020, Selzer (the fire chief) placed him on paid administrative leave "pending the Fire Department's investigation 'involving [the plaintiff's] conduct relating to several matters including disturbances [he had] been involved in and [his] interactions involving [his] fellow Village public safety professionals.'" Id. at ¶49. The plaintiff alleges that Selzer ordered him not to enter the fire department premises or any of the non-public areas of the Village without permission from Selzer or De Angelis, and ordered him not to attend any trainings, meetings or calls without Selzer's permission. Id. at ¶50.

The plaintiff avers that he and Selzer had several email exchanges, trying to schedule a time for the fire department to get information from the plaintiff for its investigation. Id. at ¶51. The plaintiff asserts that "[t]he primary scheduling problem was that the COVID-19 Pandemic had just surfaced in the United States and a Safer at Home Order was instituted in Wisconsin." Id. He

6

says that he asked to be able to provide information by email or other remote means because of the pandemic and the fact that he, his wife and his child fell into "several very high-risk categories." Id. at ¶52. He says he also asked for documentation from the fire department, including "all complaints against members of the fire department during your tenure as chief and your report on them." Id. The plaintiff says that despite the circumstances, Selzer "continued to demand an in-person interview under threat of disciplinary action and termination." Id. at ¶53.

According to the plaintiff, on May 17, 2020, "for the first time since opening an investigation into [the plaintiff], the Fire Department confirmed that the 'focus' of the investigation was on the 'charges and complaints [the plaintiff] filed against members of the Police Department.'" Id. at ¶54. He says that Selzer's May 17, 2020 email advised the plaintiff that "instead of the interview being conducted by a single Department employee (which was the customary procedure), [the plaintiff's] in-person interview" would be conducted by a group that included Selzer, Assistant Chief Kastenholz, Deputy Chief Ratay and Battalion Chief Naylor. Id. at ¶55. Selzer also told the plaintiff that he'd asked Village Attorney Kyle Gulya, to attend the interview, and he told the plaintiff that the interview was going to be videotaped. Id. The plaintiff says he told Selzer that he was willing to answer questions by email or telephone and was wiling to participate in mediation "to further flesh out any questions the Fire Department had regarding his complaints against the officers." Id. at ¶56. However, he says he confirmed that if the fire department refused those

options, the plaintiff would appeal his placement on administrative leave. Id. at ¶57. The plaintiff says that he "explained" that "[i]n that case, no interview is required and per Fire Commission Rules and Regulations you must either file charges, in a timely manner, or release me from the leave and any other restrictions you have placed on me." Id.

The plaintiff alleges that Selzer responded in an email, rejecting all the methods of interview the plaintiff had proposed and demanding an in-person interview conducted by "all the chiefs (rather than by one chief, as was the normal procedure)." Id. at ¶58. The plaintiff says he responded the same day, stating that he'd filed his appeal of the fire department's decision to put him on administrative leave; he says that appeal was rejected. Id. at ¶¶59-60. The plaintiff says that the next day, he emailed Chief Kastenholz and stated that he remained available to conduct the interview and continued to wait for the fire department to produce information "to assist with the investigation." Id. at ¶61.

The plaintiff avers that "[o]n June 26, 2020, the Fire Department filed its Statement of Charges against [the plaintiff] with the Commission" without interviewing him beforehand. Id. at ¶62. He says that he then "communicated" to the commission that he'd "experienced 'inappropriate and unprofessional actions' by the law firms representing the village and the commission, and that he "requested a telephonic hearing to discuss administrative matters" but that his request was denied. Id. at ¶63. The plaintiff says that on August 14, 2020,

the commission held a hearing on the village's[2] statement of charges, but that he wasn't present for that hearing because he had not received notice of it. Id. at ¶64. He says that the commission issued a decision "on or about" August 26, 2020, deciding there was "just cause" to terminate his employment with the fire department under Wis. Stat. §62.13(5)(e) and (em). Id. at ¶65. The plaintiff alleges that on August 26, 2020, the fire department sent him a letter telling him about the hearing and terminating his employment as of August 14, 2020. Id. at ¶66.

On September 4, 2020, the plaintiff appealed the commission's decision to the Waukesha County Circuit Court, which "later amended the case to include a petition for review by certiorari." Id. at ¶67. The plaintiff alleges that on December 10, 2020, he served the defendants with a notice of claim and that, on February 22, 2021, he received back from the defendants a notice of denial of claim. Id. at ¶¶68-69.

On June 21, 2021, the plaintiff filed his complaint in the Eastern District of Wisconsin alleging four claims. First, he alleged First Amendment retaliation against all defendants. Id. at ¶72. Second, the plaintiff brought a claim for government employer retaliation, in violation of Wis. Stat. §230.90; as the court will explain, the complaint does not specifically identify the defendants against whom the plaintiff brought this claim. Id. at ¶78. Third, the plaintiff asserted a claim for abuse of process; again, the complaint does not identify a specific

---

[2] It is not clear whether the village filed a separate statement of charges, or whether the plaintiff is referring to the statement of charges filed by the fire department.

defendant. <u>Id.</u> at ¶81. Finally, the plaintiff brought a claim for malicious prosecution, apparently against the Village of Elm Grove only. <u>Id.</u> at ¶¶92-95.[3]

For relief, the plaintiff seeks an order requiring the fire department to reinstate him with full seniority and benefits; an order requiring the defendants to give him back pay, lost benefits and costs; compensatory damages; punitive damages; and fees and costs. <u>Id.</u> at page 15.

## II. Defendants' Motion to Dismiss (Dkt. No. 27)

### A. <u>Bases for the Motion</u>

The defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) allows a party to assert by motion the defense of lack of subject-matter jurisdiction. "A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." <u>Bultasa Buddhist Temple of Chi. v. Nielsen</u>, 878 F.3d 570, 573 (7th Cir. 2017) (citing <u>Ezekiel v. Michel</u>, 66 F.3d 894, 897 (7th Cir. 1995)).

Rule 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)."[4] <u>Gunn v. Cont'l Cas. Co.</u>, 968 F.3d 802, 806 (7th Cir.

---

[3] In his brief in opposition to the motion to dismiss, the plaintiff voluntarily dismissed the malicious prosecution claim. Dkt. No. 31 at 11. The court will dismiss Count Four.

[4] Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

2020) (quoting <u>Runnion v. Girl Scouts of Greater Chi. & Northwest Ind.</u>, 786
F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual
allegations, but it must "state a claim to relief that is plausible on its face." <u>Bell
Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible if
it "pleads factual content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556
U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). In ruling on a Rule
12(b)(6) motion, the court takes "all the factual allegations in the complaint as
true," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), and draws all reasonable
inferences in the plaintiff's favor, <u>Roberts v. City of Chicago</u>, 817 F.3d 561, 564
(7th Cir. 2016).

B.    <u>Discussion</u>

1.    *Rule 12(b)(1)*

a.    <u>Younger</u> Abstention

i.    **The parties' arguments**

The defendants argued that the <u>Younger</u> abstention doctrine (<u>Younger v.
Harris</u>, 401 U.S. 37 (1971)) required the court to abstain from exercising
federal jurisdiction because of an ongoing appeal from the commission's
decision that there was "just cause" to terminate the plaintiff's employment.
Dkt. No. 28 at 19. The defendants also suggested that the court may not have
jurisdiction under the <u>Rooker-Feldman</u> doctrine.[5] <u>Id.</u> at 19-20. The plaintiff

---

[5] <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923); <u>District of Columbia
Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983).

responded that <u>Younger</u> did not apply, dkt. no. 31 at 11-12, nor did <u>Rooker-Feldman</u>, dkt. no. 31 at 12-13.

The defendants first asserted that "there is an ongoing judicial proceeding," identified in the complaint as the Waukesha County Circuit Court appeal of the Elm Grove Police and Fire Commission's decision that there was just cause to terminate the plaintiff. Dkt. No. 28 at 19 (citing Dkt. No. 1 at ¶¶65, 67). They argued that the <u>Younger</u> doctrine requires a federal court to abstain from enjoining ongoing state-court proceedings. <u>Id.</u> They contended that if the plaintiff meant to dispute the March 5, 2019 disorderly conduct citation issued to him by Officer Unger, he should have raised that dispute with a municipal judge, rather than a federal court. <u>Id.</u> The defendants argued that the plaintiff "may not circumvent the state judicial process by filing an action in federal court." <u>Id.</u> (citing <u>Gen. Auto Servs. Station LLC v. City of Chicago</u>, 319 F.3d 902, 904 (7th Cir. 2003)).

The plaintiff responded that there are only three classes of cases where the <u>Younger</u> doctrine is applicable, and none of them are present in his case. Dkt. No. 31 at 11-12. He pointed out that the state-court proceedings were not criminal or "akin to criminal." <u>Id.</u> at 11. He argued that "the State of Wisconsin proceedings involve the review mechanism for decisions made by the Police and Fire Commission," and that "[t]he only potential effect the State of Wisconsin proceedings would have on the current proceedings is on the amount of damages to which [the plaintiff] would be entitled if he were successful in the State proceedings." <u>Id.</u> at 11-12. The plaintiff said that at the state level, he

would be entitled to recover reinstatement, back pay and costs, and that any such recovery would "offset" any damages this court might award. Id. at 12.

The defendants' reply brief did not address the plaintiff's Younger arguments. Dkt. No. 32.

ii.    **Analysis**

The Younger doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021) (citing Younger, 401 U.S. at 43-44). There are three circumstances in which the Younger doctrine applies: where federal court intervention would intrude into (1) ongoing state criminal proceedings; (2) state-initiated civil enforcement proceedings akin to criminal prosecutions; or (3) civil proceedings implicating a state's interest in enforcing orders and judgments of its courts. Id. (citing Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013)).

Given the court's delay in ruling on the defendants' motion to dismiss, any potential Younger issue has become moot. The plaintiff filed his appeal in Waukesha County Circuit Court on September 4, 2020. Administrative Agency Review and Petition for Writ of Certiorari, Matthew J. Donahue v. Elm Grove Police and Fire Commission, Case No. 2020CV1258 (Waukesha County Circuit Court), available at https://wcca.wicourts.gov. That was over nine months before the plaintiff filed his federal complaint and over eleven months before the defendants filed their August 18, 2021 motion to dismiss. As of June 21, 2021—the date on which the plaintiff filed this federal complaint—the parties

in the state litigation had briefed the appeal/petition for writ of *certiorari*. Id.
On September 27, 2021—just shy of six weeks after the defendants filed their
motion to dismiss in this case and six days after it was fully briefed—the
Waukesha County Circuit Court affirmed the commission's decision in an oral
ruling, and on October 22, 2021, the state court dismissed the appeal. Id. As
far as the court is aware, there no longer is any pending state-court litigation
and there has not been for several years. Due to the court's delay, the Younger
abstention argument is moot.

That said, the plaintiff had the better of the Younger abstention
argument. The case in Waukesha County Circuit Court was not a criminal
prosecution, but an administrative appeal of the procedures followed by a
police and fire commission in making a termination decision. Nor was that
proceeding "akin" to a criminal proceeding—it was not initiated by the state
and it was not a civil enforcement proceeding (such as a proceeding in which
failure to pay child support results in incarceration, or a *habeas* proceeding).
Finally, the defendants did not explain how this federal civil proceeding could
implicate the state's interest in enforcing state-court orders or judgments. The
defendants asserted that the plaintiff had an opportunity to pursue all his
interests "through state court channels," dkt. no. 28 at 19, but that is not the
Younger standard. Even if the Younger issue had not been mooted by the
Waukesha County Circuit Court's ruling, the court would have denied the
defendants' motion to the extent that it was based on Younger abstention.

b. <u>Rooker-Feldman</u> Doctrine

i. **The parties' arguments**

As the court has explained, at the time the defendants filed their motion to dismiss, the Waukesha County Circuit Court had not yet ruled on the plaintiff's administrative appeal. In their brief, the defendants advised the court that the Waukesha County Circuit Court judge was scheduled to issue an oral ruling in just over a month. Dkt. No. 28 at 20. They asserted that as part of the administrative appeal, it was "likely" that the plaintiff "is raising the same issues as before this court," and argued that it would be improper for this court to address the same matters while the state appeal was pending. <u>Id.</u>

At the time the plaintiff filed his opposition brief, the Waukesha County Circuit Court had not yet ruled; it would do so about three weeks later. Thus, the plaintiff argued that <u>Rooker-Feldman</u> did not apply because there was not yet a state-court judgment. Dkt. No. 31 at 12. He argued that whenever the state court *did* issue its decision, it would not be based on the "specific facts at issue in this [federal] action," because it would be a "procedural, not substantive, review." <u>Id.</u> at 13. The plaintiff also insisted that he was not challenging in federal court the municipal citation issued him by Officer Unger of the Elm Grove Police Department; he argued that the complaint clearly demonstrated that fact. <u>Id.</u> at 12. The defendants did not address the plaintiff's <u>Rooker-Feldman</u> arguments in their reply brief. Dkt. No. 32.

15

ii. **Analysis**

"[T]he *Rooker-Feldman* doctrine 'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." Brokaw v. Weaver, 305 F.3d 660, 664 (7th Cir. 2002) (quoting Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 996 (7th Cir. 2020)). The Rooker-Feldman doctrine requires a federal court to consider whether the "federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 510 (7th Cir. 1996). It applies to claims directly seeking to set aside a state court judgment as well as claims that "do not on their face require review of a state court's decision" but "are inextricably intertwined with a state court judgment." Jakupovic v. Curran, 850 F.3d 898, 902 (7th Cir. 2017) (citing Sykes v. Cook Cnty. Cir. Ct. Probate Div., 837 F.3d 736, 742 (7th Cir. 2016)). Such claims essentially ask the federal district court to engage in "impermissible appellate review." Kamilewicz, 92 F.3d at 510.

Whether a claim is inextricably intertwined with a state court judgment "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." Sykes, 837 F.3d at 742. If the federal court determines that a claim is inextricably intertwined

16

with a state court judgment, the claim is barred when the "plaintiff had a reasonable opportunity to raise the issue in state court proceedings." Jakupovic, 850 F.3d at 902. The doctrine is narrow, barring claims only where the federal claim cannot be separated from the judgment of the state court. Id. at 902 (citing Sykes, 837 F.3d at 742).

Again, due to the court's delay in addressing the defendants' motion, the state court since has ruled on the plaintiff's administrative appeal. The state court docket gives no indication that the plaintiff appealed the Waukesha County Circuit Court's decision any further, so that court's October 22, 2021 decision is final. But the court agrees with the plaintiff that the Rooker-Feldman doctrine does not bar his federal claims.

As the plaintiff explained in the complaint, on August 26, 2020, the Elm Grove Police and Fire Commission issued a decision on the disciplinary charges against the plaintiff, concluding that there was "just cause" under Wis. Stat. §62.13(5)(em)[6] to sustain them. Dkt. No. 1 at ¶65. The complaint alleges that the plaintiff appealed the administrative procedures that resulted in that decision—the decision that there was "just cause" to sustain the disciplinary charges—to the Waukesha County Circuit Court. Id. at ¶67. The complaint alleges that the appeal "involved Wisconsin Statute § 62.13(5)(j)." Id. Wis. Stat.

---

[6] Wis. Stat §62.13 governs police and fire departments. Section 62.13(5)(em) provides (among other things) that a subordinate may not be removed by the board of fire and police commissioners based on charges filed by the board, members of the board, an aggrieved person or the chief unless the board determines whether there is "just cause" to sustain the charges. It provides a list of factors the board must apply in making that determination.

§62.13(5)(j) states that the provisions of Wis. Stat. §§62.13(5)(a)-(i) "shall apply to disciplinary actions against the chiefs where applicable. In addition thereto, the board may suspend a chief pending disposition of charges filed by the board or by the mayor of the city."[7]

The Waukesha County Circuit Court's oral ruling stated, in pertinent part:

> Court finds that [the plaintiff] was on notice of the departments rules and regulations. Court finds that [the plaintiff] was uncooperative and was an obstructionist. Court finds that investigation conducted was fair. Court supports the commission's findings and finds that they were fair and objective. Court finds that the record does not support any allegation of discrimination by [the plaintiff]. Court finds that just cause existed for the firing of [the plaintiff] and that proper procedures were followed by the commission and the commission's actions were reasonable and appropriate. Court affirms the commissions decision in its entirety.

Administrative Agency Review and Petition for Writ of Certiorari, Matthew J. Donahue v. Elm Grove Police and Fire Commission, Case No. 2020CV1258 (Waukesha County Circuit Court), September 27, 2021 oral ruling, available at https://wcca.wicourts.gov.

This language supports the plaintiff's assertion that he appealed the procedures used by the commission to find just cause and to remove him. In contrast, the federal complaint does not allege improprieties in the administrative process used by the commission. Rather, in alleging retaliation, the complaint asserts that the defendants' actions—in particular, the actions

---

[7] It is not clear how Wis. Stat. §62.13(5)(j) had anything to do with whether the commission had just cause to remove the plaintiff, or how it related to the procedures the commission used for making its just cause determination.

18

that led to the plaintiff being investigated by the fire department, which issued the disciplinary charges that ultimately led to the plaintiff's removal—chilled "the rights of free speech belonging to employees such as [the plaintiff]," and that "[i]f not checked, the Defendants' conduct would serve to prevent and preclude others from questioning and/or complaining about misconduct by police officers." Dkt. No. 1 at ¶¶73, 74. The plaintiff also alleged retaliation in Count II (in violation of a state whistle-blower statute) and alleged in Count III that legal processes were abused to accomplish the retaliation. Id. at ¶¶76-90.

The federal claims do not allege an injury caused by the state court's ruling. The plaintiff could not have alleged First Amendment violations in a request for administrative review of the commission's procedures. The federal claims easily can be separated from the issues addressed in the state court's judgment.

Because neither Younger abstention nor the Rooker-Feldman doctrine apply, the court will deny the defendants' motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[8]

C.     Rule 12(b)(6)

The plaintiff seeks to proceed on three claims: a First Amendment retaliation claim brought through 42 U.S.C. §1983 against the Village of Elm

---

[8] The court has federal question jurisdiction under 28 U.S.C. §1331 because the plaintiff brought the federal suit under 42 U.S.C. §1983. Dkt. No. 1 at ¶1. The court has the discretion to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a) if the Wisconsin state law claims are substantially related to the federal claim.

Grove, Village Manager DeAngelis, Interim Fire Chief Kastenholz, Deputy Chief Ratay and Battalion Chief Naylor[9]; a state-law claim of government employer retaliation under Wis. Stat. §230.90; and a claim of "abuse of process."

          1.    *First Amendment Retaliation*

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The plaintiff alleges that the Village of Elm Grove, DeAngelis, Kastneholz, Ratay and Naylor retaliated against him in violation of his First Amendment rights. To sustain a claim for First Amendment retaliation, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity caused the deprivation." Cobian v. McLaughlin, 717 F. App'x 605, 612 (7th Cir. 2017) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010)) (citation omitted).

---

[9] In his brief in opposition to the defendants' motion to dismiss, the plaintiff stated, "For purposes of [the plaintiff's] First Amendment Retaliation Claim, [the plaintiff] does not intend to proceed against the Village of Elm Grove Fire Department or the Village of Elm Grove Police and Fire Commission and its Commissioners." Dkt. No. 31 at 3 n.1.

a.  Village of Elm Grove

The defendants argue that the plaintiff has failed to state a claim against the village. Dkt. No. 28 at 5. They assert that the plaintiff did not properly state a claim under Monell, which limits municipal liability under §1983 to circumstances "'when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The defendants also argue that the plaintiff has not alleged a constitutional injury caused by the Village. Id. at 6 (citing Thompson v. Boggs, 33 F.3d 847, 859 n.11 (7th Cir. 1994) (citation omitted)).

In his opposition brief, the plaintiff did not respond to the defendants' Monell argument or acknowledge the Monell decision.

Section 1983 allows a plaintiff to sue any "person" who violates his civil rights while acting under color of state law. The Supreme Court has held that Congress intended municipalities and local government units "to be included among those persons to whom §1983 applies." Monell, 436 U.S. at 690. But it also held that municipalities can be sued under §1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. Put another way, "[a] village or other municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom." Wragg v. Vill. of Thornton, 604 F.3d 464, 467 (7th Cir. 2010) (citing Monell, 436 U.S. 658). "To establish an official

21

policy or custom, a plaintiff must show that his constitutional injury was caused 'by (1) the enforcement of an express policy of the [village], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority.'" Id. (quoting Latuszkin v. City of Chicago, 250 F.3d 502, 504 (7th Cir. 2001)).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. "Municipalities may be sued only for their own violations of federal law . . . and cannot be held vicariously liable for the constitutional torts of their employees." Thomas v. Neenah Joint Sch. Dist., 74 F.4th 521, 523 (7th Cir. 2023) (citing Deal v. Wexford Health Sources, Inc., 18 F.4th 214, 235 (7th Cir. 2021) (citing Monell, 436 U.S. at 691-94)).

Nowhere in the complaint does the plaintiff allege that the village had a custom, policy or practice that resulted in a violation of his First Amendment rights. He alleges that *individual employees* of the village (and of the fire department) engaged in conduct that he believes violated his First Amendment rights. But a municipality cannot be held liable under §1983 for constitutional torts committed by its employees. The plaintiff has not alleged that any of the individual defendants had policy-making authority or that they were acting under a custom, practice or policy of the village when they took the actions the plaintiff describes in the complaint.

The complaint fails to state a claim against the Village of Elm Grove, and the court will grant the defendants' motion to dismiss the First Amendment retaliation claim against the village.

> b. Interim Fire Chief David Kastenholz, Deputy Chief Bruce Ratay, Battalion Chief Brian Naylor and Village Manager David DeAngelis

The defendants argue that the complaint fails to state a claim against these individual defendants "because the allegations . . . are either nonexistent or insufficient to support a claim." Dkt. No. 28 at 8. They argue that the complaint is bare of allegations of wrongdoing by Kastenholz, Ratay and Naylor and that it does not allege that they were aware of the plaintiff's initial complaints against the police department Id. at 8-9. As to DeAngelis, the defendants assert that the complaint fails to include any "factual allegations of retaliatory conduct or that he had any role in the investigation or the ultimate decision." Id. at 9.

In his opposition brief, the plaintiff responds by repeating much of the content of the complaint. The plaintiff asserts that DeAngelis received the plaintiff's complaints and issued a memo to the board of trustees. Dkt. No. 31 at 6. The plaintiff points to the complaint's allegation that DeAngelis's memo to the board "advised against investigating [the plaintiff's] complaints, made several false accusations against [the plaintiff], and misrepresented facts concerning [the plaintiff's] underlying complaints." Id. at 6 (citing Dkt. No. 1 at ¶47). He also points to the allegation that DeAngelis's memo instructed the fire department to open an investigation into the plaintiff. Id. (citing Dkt. No. 1 at

23

¶48). The plaintiff adds considerable detail about the actions of the fire department (despite the fact that he elected not to proceed against that defendant on the First Amendment retaliation claim and despite the fact that he did not include this detail in the complaint), without making any allegations about DeAngelis, Kastenholz, Ratay or Naylor. Id. at 6-7. The plaintiff argues that the complaint "contains an overabundance of facts supporting his First Amendment Retaliation claim against Interim Chief David Kastenholz, Deputy Chief Bruce Ratay, and Battalion Chief Brian Naylor." Id. at 7.

In their reply, the defendants assert that the plaintiff "seems to group the defendants as a whole under the guise of improper conduct by the 'Fire Department' generally." Dkt. No. 32 at 4. They argue that such allegations are insufficient to state a §1983 claim. Id. (citing Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996).

For an individual state actor to be held liable under §1983, the plaintiff must allege that the actor was personally involved in the alleged constitutional deprivation. Colbert v. City of Chicago, 851 F.3d 649, 656 (7th Cir. 2017) (quoting Minix v. Canarecci, 597 F.3d 824, 833 (7th Cir. 2010)); Martin v Noble Cnty. Sheriff's Dep't., Case No. 21-1214, 2021 WL 5505407, *1 (7th Cir. Nov. 24, 2021) ("Without [allegations] of personal involvement, the named individual defendants cannot be liable under § 1983.") (citation omitted). "An allegation that a group of defendants is liable 'without any details about who did what' does not state a claim for relief." Milchtein v. Milwaukee County, 42 F.4th 814, 824 (7th Cir. 022) (quoting Bank of America, N.A. v. Knight, 725 F.3d 815, 818

24

(7th Cir. 2013)). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." Colbert, 851 F.3d at 657 (citing Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) (quotation omitted)).

The plaintiff's *brief* does not identify any conduct by Kastenholz, Ratay and Naylor, but in considering a motion to dismiss under Rule 12(b)(6), the court looks to the allegations in the *complaint.* The complaint alleges that Kastenholz, Ratay and Naylor are employees of the fire department and that Selzer told the plaintiff that his in-person interview—part of the fire department's investigation—would be conducted by Kastenholz, Ratay, Naylor and Selzer (and attended by the village attorney). Dkt. No. 1 at ¶¶6-8, 55. The plaintiff alleges that he sent an email to Kastenholz "indicating that [the plaintiff was] still available to conduct the interview and still waiting for the [fire department] to produce information to assist with the investigation." Id. at ¶61. He makes no other factual allegations about Kastenholz, Ratay or Naylor, other than closing with the conclusory assertion that each of them was involved in "punish[ing] and/or retaliat[ing] against [him] for having expressed his complaints, opinions, and concerns in violation of the First Amendment." Id. at ¶72.

The complaint does not describe any actions taken by Kastenholz, Ratay or Naylor. It does not explain *how* Kastenholz, Ratay or Naylor punished or retaliated against the plaintiff. It does not describe their roles in the alleged retaliation against the plaintiff. Although the complaint alleges that Selzer told

25

the plaintiff that Kastenholz, Ratay and Naylor would be part of the group conducting the plaintiff's disciplinary interview, it does not allege that they were aware of the content of the plaintiff's statement of charges, or that they knew they were supposed to be part of an interview panel, or that they interviewed the plaintiff. Although it alleges that the plaintiff sent Kastenholz an email, the complaint does not allege that Kastenholz received that email, responded to the email or took any action regarding the email. The complaint does not allege that Kastenholz, Ratay or Naylor directed the fire department's investigation or made decisions about the investigation. Nor does the complaint allege that any of them participated in the commission hearing or caused the plaintiff's removal. The plaintiff has failed to state a claim of First Amendment retaliation against Kastenholz, Ratay and Naylor. The court will dismiss the First Amendment retaliation claim as to Kastenholz, Ratay and Naylor.

The complaint *does* describe some conduct by Village Manager DeAngelis. The plaintiff alleges that DeAngelis issued the memo advising the village board of trustees that the plaintiff had filed a complaint. Dkt. No. 1 at ¶46. It is difficult to tell from the wording of the complaint, but the plaintiff also may allege that DeAngelis actively confirmed that the complaint fell under his jurisdiction and that of the police chief. Id. The complaint alleges that DeAngelis advised the board of trustees against investigating the plaintiff's complaint, made false representations against the plaintiff and misrepresented some of the facts about the plaintiff's complaints. Id. at ¶47. Finally, the plaintiff alleges that DeAngelis instructed the fire department to begin an

26

investigation into the plaintiff. Id. at ¶48. The plaintiff alleges that the fire chief "placed [him] on paid administrative leave pending the Fire Department's investigation." See id. at ¶49.

Construing these allegations in the light most favorable to the plaintiff, the court concludes that the plaintiff has alleged that he engaged in activity protected by the First Amendment—making a complaint through his statement of charges. He has alleged that he suffered a deprivation that likely would deter his First Amendment activity in the future—he was subjected to an investigation, a hearing and removal. And he has alleged that the fact he made complaints caused the fire department to investigate him, which led to the commission's hearing and his removal. He has alleged that DeAngelis knew of his First Amendment activity (by alleging that DeAngelis received his statement of charges and advised the village board about them), that DeAngelis basically rejected the plaintiff's complaints by advising the board of trustees not to investigate them and by misrepresenting them and that DeAngelis caused at least one deprivation—the institution of a fire department investigation into the plaintiff—which led to the others. While the allegations against DeAngelis are sparse, they are sufficient to state a plausible claim at the pleading stage.

The defendants raise two additional arguments that potentially apply to the plaintiff's retaliation claim against DeAngelis. First, the defendants argue that a First Amendment retaliation claim based on March 5, 2019 municipal citation issued by Officer Unger may be barred by Nieves v. Bartlett, ___ U.S.

27

___, 139 S. Ct. 1715 (2019). Dkt. No. 28 at 10.[10] But the plaintiff has not challenged the issuance of the municipal citation in the federal lawsuit. The plaintiff alleged that he was issued the citation on March 5, 2019 by Elm Grove Police Officer Unger, dkt. no. 1 at ¶34, but he did not sue Unger or any other Elm Grove (or other) police officers.

Second, the defendants argue that the plaintiff's alleged First Amendment-protected activity—the grievances stated in his statement of charges—involved his own private interests and not matters of public concern. Dkt. No. 28 at 11, 12. They assert that "[t]he First Amendment protects a public employee's right in certain circumstances to speak as a citizen addressing matter[s] of public concern.'" Dkt. No. 28 at 11 (quoting Anderson v. Wis. Dept. of Health and Family Servs., Case No. 08-cv-82, 2009 WL 196736, *6 (W.D. Wis. Jan. 26, 2009)). They argue that "'a public employee's speech motivated solely by private interests is not protected speech, even if the speech is relevant to a public issue." Id. (quoting Hagan v. Quinn, 84 F. Supp. 3d 826, 830 (C.D. Ill. 2014)).

The plaintiff responds that "complaining of police misconduct is a matter of public concern and thus protected speech." Dkt. No. 31 at 4 (citing Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002); Nolan v. Vill. of Dolton, No. 10 CV 7357, 2011 WL 1548343 (N.D. Ill. Apr. 21, 2011)). He argues that he was complaining about the police department's conduct relating to Officer Hawkins's visit to his house and the police department's alleged failure to

---

[10] The plaintiff did not address this issue in his brief in opposition.

follow up on the plaintiff's attempt to file a complaint against Father Berger and the church. Id. at 4-6.

Whether speech is constitutionally protected is a question of law. Kubiak v. City of Chicago, 810 F.3d 476, 481 (7th Cir. 2016) (citing Houskins v. Sheahan, 549 F.3d 480, 489 (7th Cir. 2008)). "A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern." Forgue v. City of Chicago, 873 F.3d 952, 966 (7th Cir. 2017). The defendants do not dispute that the plaintiff was a public employee and was speaking as a private citizen, so the issue is whether the content of his speech addressed a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Graber v. Clarke, 763 F.3d 888, 895 (7th Cir. 2014) (citation and quotation marks omitted). "Content is the most important of these three factors." Id. (citing Gustafson v. Jones, 290 F.3d 895, 907 (7th Cir. 2002)).

The plaintiff's statements expressing concerns about the police department appear generally to relate to a public concern: police misconduct, "the subject matter alone does not convey constitutional protection to his statements." Nagle v. Vill. of Calumet Park, 554 F.3d 1106, 1123 (7th Cir. 2009) (citing Cliff v. Bd. of Sch. Comm'rs, 42 F.3d 403, 410 (7th Cir. 1994) (citations omitted)). Courts "must instead delve deeper into the precise content, form, and context of speech that admittedly may be of some interest to the

29

public." Id. (quoting Cliff, 42 F.3d at 410, citing Connick v. Myers, 461 U.S. 138, 147-48 (1983)).

The plaintiff alleges that his statement of charges "set forth in detail the legal, professional, regulatory, and ethical issues exhibited by Chief Gage and Officers Hawkins, Hennen, and Noble." Dkt. No. 1 at ¶42. The plaintiff did not quote his statement of charges in the complaint, so the court does not know the "precise content" of his speech. But the plaintiff appears to have summarized some of the charges in the complaint. He says that he expressed frustration with the way Officer Hawkins had conducted himself at the plaintiff's house on March 6, 2019. Id. at ¶28. He describes a verbal altercation with Hennan in which allegedly threatened to publicly pull the plaintiff from a "fire meeting" and hand him a citation. Id. at ¶¶28-32. The plaintiff has alleged that Chief Gage told him that he would be arrested for the citation and later refused to investigate the plaintiff's complaints about the church and Father Berger. Id. at ¶¶33, 39-40. The plaintiff alleges that Officer Noble refused to allow the plaintiff's wife, "a co-complainant and witness to the matter complained of," to join the plaintiff when making the complaint. Id. at ¶36. The plaintiff avers that Noble told him that it was against the law for two people to make a complaint. Id. at ¶37. It appears that the content of the plaintiff's speech involved allegations that members of the Elm Grove Police Department behaved unprofessionally, abused their authority, threatened to embarrass the plaintiff, refused to investigate the plaintiff's allegations against Father Berger

and the church and declined to allow his wife to lodge a complaint. The content is related to matters of public concern—the conduct of public servants.

The form of the plaintiff's speech supports the conclusion that the speech related to a matter of public concern. The plaintiff put his allegations in writing and transmitted it to the Elm Grove Police and Fire Commission, the organization responsible for monitoring the conduct of the police department. The context also supports the conclusion that the speech related to a matter of public concern—by directing the speech to the organization responsible for monitoring the conduct of the police department, the plaintiff appears to have been attempting, in part, to have the alleged inappropriate police conduct officially addressed by an entity with the authority to do so. The court concludes that the plaintiff's speech, although uttered by a public employee, was protected by the First Amendment.

The court will grant the defendant's motion to dismiss Count One as to the Village, Kastenholz, Ratay and Naylor for failure to state a claim. The court will deny the defendant's motion to dismiss Count One as to DeAngelis.

2. *Wis. Stat. §230.90*

Count II of the complaint asserts a claim under Wis. Stat. §230.90. Dkt. No. 1 at ¶¶76-79. As the court explained at the March 21, 2024 hearing, however, the complaint did not specify against which defendants the plaintiff wished to assert this claim. The complaint alleges that the plaintiff complained to "the Village, Commission, and Fire Department" about the alleged police misconduct, and that the "Village, Commission, and Fire Department"

31

punished him for exercising his First Amendment rights. Id. at ¶¶77-78. But the final paragraph of the count alleges that the plaintiff has "incurred substantial damages as a result of the *Defendants'* violation" of the statute. Id. at ¶79 (emphasis added).

At the March 21, 2024 hearing, the plaintiff's counsel orally advised the court that the plaintiff intended to assert his Wis. Stat. §230.90 claim only against the Elm Grove Fire Department. (The plaintiff was present with counsel at the hearing.) Based on that representation, the court will dismiss Count II as to all defendants except the Elm Grove Fire Department. Although the defendants made their arguments with the understanding that the village was the defendant against whom the plaintiff raised the claim in Count II, the court will analyze their arguments as if they had been made as to the fire department.

The defendants argue that Wis. Stat. §230.90 is a whistleblower statute and is "limited to the State or a defined State agency, and the Complaint does not contain any allegations against the State or a defined State agency." Dkt. No. 28 at 13. They argue that the court should dismiss Count II on this basis. Id. (citing Dept. of Justice v. Dept. of Workforce Dev., 361 Wis. 2d 196 (Wis. Ct. App. 2015) affirmed in Dept. of Justice v. Dept. of Workforce Dev., 365 Wis. 2d 694 (Wis. 2015)). They assert that §230.90 applies only to state agencies and that "agencies" does not include the plaintiff's employer.[11] Dkt. No. 28 at 13.

---

[11] The defendants also insist that the plaintiff has alleged that the village, not the fire department, was his employer. Dkt. No. 28 at 14 (citing Dkt. No. 1 at ¶18). It is unclear why the defendants take this position, because the

The defendants quote Chapter 230, "State Employment Relations," to argue that "'[a]gency' does not mean any local unit of government or body within one or more local units of government that is created by law or by action of one or more local units of government." Id. (quoting Wis. Stat. §230.03(3)).

The defendants also argue that even if the fire department is an "agency" under the statute, the plaintiff's claim "still fails because § 230.90 does not offer protection for employee statements which merely voice opinions or offer criticism." Id. (citing Kmetz v. State Historical Soc., 304 F. Supp. 2d 1108, 1115, 1141 (W.D. Wis. 2004) rev'd in part on other grounds by Kmetz v. Vogt, 2004 WL 298102). They assert that the plaintiff was merely offering his personal opinions in the form of "criticism of his interaction with [fire department] personnel." Id. at 14. The defendants say that the plaintiff's "conclusory allegation that he complained about 'mismanagement or abuse of authority by the Elm Grove Police Department officers' is not supported by factual allegations sufficient to defeat this motion." Id. at 14 (citing dkt. no. 1 at ¶¶22, 28, 41).

The plaintiff responds that he has alleged "that he 'complained to the Village, Commission, and Fire Department about mismanagement or abuse of authority by the EGPD officers.'" Dkt. No. 31 at 9 (quoting Dkt. No. 1 at ¶77). He asserts that he "complained of misconduct and mismanagement on behalf

---

paragraph they cite states, "[the plaintiff] was employed as a Volunteer Firefighter by the *Village of Elm Grove Fire Department* from March 4, 2014 through August 31, 2020." Dkt. No. 1 at ¶18 (emphasis added). The plaintiff has not alleged that he was employed by the Village or by the Commission.

of the EGPD and was disciplined (terminated) for his complaint. The conduct falls squarely within the statute." Id. The plaintiff also argues that his speech did not constitute mere opinions or criticisms, but "specific statements of fact to his employer indicating a mismanagement or abuse or [sic] authority within the Village." Id.

"Wisconsin Stat. §230.90 is one of Wisconsin's whistleblower provisions." Kinzel v. Bd. of Regents of the Univ. of Wis. Sys., 347 Wis. 2d 550, ¶18 (Wis. Ct. App. 2013). "It prohibits state employers from disciplining public employees for disclosing certain information." Id. Under §230.90,

> [a]n employee may bring an action in circuit court against his or her employer or employer's agent, including this state, if the employer or employer's agent retaliates, by engaging in a disciplinary action, against the employee because the employee exercised his or her rights under the first amendment to the U.S. constitution or article I, section 3, of the Wisconsin constitution by lawfully disclosing information or because the employer or employer's agent believes the employee so exercised his or her rights.

Wis. Stat. §230.90(2). The Wisconsin Court of Appeals has interpreted the statute's scope narrowly, holding that

> [a]lthough Wisconsin's whistleblower statutes are to be liberally construed, "only certain disclosures made a particular way and regarding a subject matter covered in the statute will qualify for protection." Huston v. State of Wisconsin Pers. Comm., 2003 WI 97, ¶ 37, 263 Wis. 2d 612 . . .. WISCONSIN STAT. § 230.90 does not cover statements that merely voice opinions or offer criticism. Kmetz, 304 F. Supp. 2d at 1115. Rather, a whistleblower action against a state employer has the threshold requirement that the employee be "lawfully disclosing information." WIS. STAT. § 230.90(2) (emphasis added).
>
> WISCONSIN STAT. § 230.90(1)(d) defines "[i]nformation" as "information gained by the employee which the employee reasonably believes demonstrates . . . [a] violation of any state or federal law, rule or regulation [or] [m]ismanagement or abuse of authority in

34

state government, a substantial waste of public funds or a danger to public health and safety."

Kinzel, 347 Wis. 2d at ¶¶19-20.

Section 230.90 allows an employee to bring a claim only against his or her employer or the employer's agent. Wis. Stat. §230.90(2). The plaintiff has alleged that he worked for the fire department, dkt. no. 1 at ¶18, and he clarified at the March 21, 2024 hearing that he raised his §230.90 claim only against the fire department.

While the defendants cite other subsections of Wisconsin's whistleblower laws, it is Wis. Stat. §230.90 that defines the people and entities covered by the statute. Section 230.90(b) defines an "employee" as "any person employed by any governmental unit" (with two inapplicable exceptions). Section 230.90(c) defines "Governmental unit" as "any association, board, commission, department, independent agency, institution, office, society or other body in state government created or authorized to be created by the constitution or any law, including the legislature, the office of the governor and the courts." To state a claim under §230.90, the plaintiff must allege that the fire department fits within the language of §230.90(c).

The plain language of §230.90(c) encompasses any "department . . . [or] other body in state government created or authorized to be created by the constitution or any law." The plaintiff has alleged that the fire department "is a volunteer fire department organized under the laws of the State of Wisconsin." Dkt. No. 1 at ¶5. The plaintiff is entitled to the "assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Twombley,

35

550 U.S. at 555. "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." <u>Neitke v. Williams</u>, 490 U.S. 319, 327 (1989). At the pleading stage, the court accepts as true the plaintiff's allegation that the fire department is organized under a law made by the Wisconsin legislature. The court questions whether the fire department is a department or body "in state government;" it appears to be a department or body in *municipal* government. The plaintiff should address this in the amended complaint.

As to whether the information the plaintiff disclosed was information that he reasonably believed demonstrated a violation of a law, rule or regulation, or mismanagement or abuse of authority in state government, the analysis is similar to whether the plaintiff's speech addressed a public concern. The plaintiff alleges that because he "complained to the Village, Commission, and Fire Department about mismanagement or abuse of authority by the EGPD officers," "[t]he Village, Commission, and Fire Department disciplined and terminated [the plaintiff]." Dkt. No. 1 at ¶¶77-78. In support of this allegation, the plaintiff asserts that he filed a formal statement of charges with the Police and Fire Commission against Chief Gage and Officers Hawkins, Hennan and Noble. <u>Id.</u> at ¶¶41-42. Specifically, the charges related to the plaintiff's attempt to lodge a complaint against Father Berger and the church, his request that the police department prevent Berger and the church from contacting him and the police department's alleged failure to do so, the police department's interference with his wife's ability to file a complaint against Berger and the

36

church and the police department's failure to act on the plaintiff's complaint, including Chief Gage's alleged direction that the plaintiff's complaint not be investigated. Id. at ¶¶35-40. The plaintiff argues that these actions comprise the "mismanagement or abuse." Id. at ¶77. These allegations are not merely criticisms of the police department, but assertions that the police department and the commission abused their power to consider citizen complaints and act upon them.

Again, there is a question whether the plaintiff's information involved any violations of *state* or federal law or any mismanagement or abuse of authority in *state* government. The Elm Grove Police Department, like the fire department, appears to be a department of *municipal* government. But given the relatively low bar at the pleading stage, the court will allow the plaintiff to proceed on his Wis. Stat. §230.90 claim against the fire department only.

### 3.  *Abuse of Process*

Count III suffers a deficiency similar to the one suffered by Count II. As the court explained at the March 21, 2024 hearing, Count III does not specify against which defendants the plaintiff wished to assert his abuse-of-process claim. Paragraphs 81-87 mention the "village," alleging that it used legal process against him, that it instructed the fire department to investigate him, that it escalated the matter to his termination, *etc.*[12] But the final three

---

[12] The court said at the March 21, 2024 hearing and has said in this order that the March 5, 2019 municipal citation issued by Elm Grove Police Officer Unger to the plaintiff is not the basis for his federal lawsuit. But in Count III, the plaintiff asserts that "[t]he citation issued by the [Elm Grove Police Department]

paragraphs of the count allege that the "*Defendants*" used legal process against him for a purpose for which that process was not designed and that he had suffered damage as a result of the "*Defendants*" abuses of process. Id. at ¶¶88-90.

At the March 21, 2024 hearing, the plaintiff's counsel orally advised the court that the plaintiff intended to assert the abuse of process claim against the Village of Elm Grove, Kastenholz, Ratay and Naylor.[13] The original complaint is wholly insufficient to allege this claim against Kastenholz, Ratay and Naylor because Count III makes no mention of them and gives them no notice that they would be required to defend against that claim. The bigger problem, however, is that the complaint does not state facts sufficient to allege an abuse -of-process claim (or any other claim) against Kastenholz, Ratay or Naylor, and the village is immune from an abuse-of-process suit.

_____

was made in retaliation for [the plaintiff's] complaints against the [Elm Grove police officers] and was intended to stop [the [plaintiff] from pursuing his complaints against the Officer." Dkt. No. 1 at ¶82. Count III also asserts that had the plaintiff not complained about the conduct of the Elm Grove police officers, "he would not have been issued a citation." Id. at ¶85. If, as the plaintiff asserted in his brief in opposition to the motion to dismiss and at the March 21, 2024 hearing, the municipal citation is not the basis of this federal lawsuit, one wonders why the plaintiff included these allegations. As the defendants have argued, if the plaintiff wanted to challenge the municipal citation, he should have done so through the municipal court.

[13] The plaintiff now has narrowed his claims to Counts I, II and III and has identified the defendants who are the targets of each count. The commission, and individual commissioners Bob Haugh, David Molter, Allan Kasprzak and Gus Moulas, have not been identified as the targets of *any* of the three counts in the complaint. The court will dismiss them, and questions why the plaintiff included them to begin with.

38

The defendants quote <u>Thompson v. Beecham</u>, 72 Wis. 2d 356, 362 (Wis. 1976) in asserting that there can be no liability for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Dkt. No. 28 at 15. They assert that the fact that the police department issued the disorderly conduct citation, or the fact that the fire chief filed a statement of charges with the commission, "cannot, in and of itself, form a basis for an abuse of process claim." <u>Id.</u> at 16. They contend that "[t]here are no factual allegations that the process for issuing a citation or for the Commission to address the Statement of Charges was not lawful, was not proper, or was employed solely for the purpose of stopping [the plaintiff] from pursuing his two complaints against the police officers." <u>Id.</u> at 16.

The defendants also argue that Wis. Stat. §893.80(4) requires the court to dismiss any intentional tort claims against the village. <u>Id.</u> at 22. They assert that "[c]laims against a municipality for 'intentional' conduct of its employees are specifically barred under the provisions of Wisconsin Statute § 893.80(4)." <u>Id.</u> They contend that abuse of process is an intentional tort. <u>Id.</u> (citing <u>Thompson</u>, 72 Wis. 2d at 362).

The plaintiff responds that he "described in detail the length to which the Village, Village Manager David DeAngelis,[14] Interim Chief David Kastenholz, Deputy Chief Bruce Ratay, and Battalion Chief Brian Naylor" went to

---

[14] At the March 21, 2024 hearing, the plaintiff did *not* identify DeAngelis as a target of Count III.

39

improperly use the police and fire commission process. Dkt. No. 31 at 10. He asserts that "[t]hese defendants used legal process for the improper purpose of retaliating against [the plaintiff] because [the plaintiff] spoke-out against police misconduct." Id. With regard to the village, he argues that it "used legal process against [the plaintiff] to obtain a collateral advantage associated with [the plaintiff's] complaints against the EGPD Officers." Id. (quoting Dkt. No. 1 at ¶81). He claims that the village used another process—the disciplinary process through the commission—to "eliminate" the plaintiff's complaints. Id. (citing dkt. no. 1 at ¶¶83-89).

The defendants reply that the plaintiff cannot bring a claim against a municipality based on the intentional conduct of its employees. Dkt. No. 32 at 9 (citing Wis. Stat. §893.80(4)). They assert that an abuse of process claim is an intentional tort, and that "the Village cannot be found liable for an intentional tort." Id. (citing Thompson, 72 Wis. 2d at 362). As to Kastenholz, Ratay and Naylor, the defendants point out that they were not named in Count III. Id. (citing Dkt. No. 1 at ¶81). They assert that, at best, the plaintiff has alleged improper motive, but has not identified any unauthorized or improper process, arguing that the disorderly conduct citation and the statement of charges to the commission "were all done pursuant to the established processes." Id. at 10. Finally, the defendants assert that the plaintiff has not alleged that a willful act was committed in the use of process that would not have been proper in the regular conduct of that process. Id.

40

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." <u>Schmit v. Klumpyan</u>, 264 Wis. 2d 414, 421 (Wis. Ct. App. 2003) (quoting 2 Dan B. Dobbs, The Law of Torts §438 (2001)). "The essence of this cause of action is the misuse of the court's power, 'usually to compel the victim to yield on some matter not involved in the suit.'" <u>Id.</u> (quoting <u>Brownsell v. Klawitter</u>, 102 Wis. 2d 108, 114 (Wis. 1981) (quoting Dobbs §438).

> In Wisconsin, there are two elements of abuse of process. First, a "wilful act in the use of process not proper in the regular conduct of the proceedings." *Brownsell*, 102 Wis.2d at 115 . . .. This element requires evidence of "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Thompson v. Beecham*, 72 Wis.2d 356, 362 . . . (1976). As the supreme court explained in *Thompson*:

>> [T]he process must be used for something more than a proper use with a bad motive. The plaintiff must allege and prove that something was done under the process which was not warranted by its terms. The existence of an improper purpose alone is not enough, for this improper purpose must also culminate in an actual misuse of the process to obtain some ulterior advantage.

> *Id.* at 363 . . ..

> The second element of abuse of process is a subsequent misuse of the process. *Id.* at 362 . . .. This element requires evidence of "coercion to obtain a collateral advantage, not properly involved in the proceeding itself," *id.*, or of use of the process "to effect an object not within the scope of the process," or of any other improper purpose. *Brownsell*, 102 Wis.2d at 113 . . . (citation omitted) (emphasis omitted).

A key component of the second element is the requirement that the
process be used to obtain a collateral advantage, an advantage that
is "not a benefit to the suitor that the process was designed to
secure." DOBBS, *supra*, at § 438. The attempt to obtain a collateral
advantage is an important component because the tort is
characterized as an attempt to use process as a means of extortion.
*See* RESTATEMENT (SECOND) OF TORTS § 682 cmt. B (1977). An
early decision of the Wisconsin Supreme Court clarifies that the
inquiry is "whether the process has been used to accomplish some
unlawful end, or to compel the defendant to do some collateral thing
which he would not legally be compelled to do." *Doctor v. Riedel*, 96
Wis. 158, 161 . . . (1897).

Id.at 421-23.

The court explained in analyzing the plaintiff's First Amendment

retaliation claim that the complaint's sole allegation against Ratay and Naylor

is that Selzer told the plaintiff that his in-person interview would be conducted

by several people, including Ratay and Naylor. The complaint's sole allegations

against Kastenholz are that Selzer told the plaintiff that Kastenholz also would

be one of the people who'd participate in the plaintiff's interview, and that the

plaintiff sent Kastenholz an email. Even if the plaintiff had named Kastenholz,

Ratay and Naylor in Count III, these assertions are nowhere near sufficient to

allege an abuse-of-process claim against them. The plaintiff has not alleged *any*

acts by Kastenholz, Ratay or Naylor, much less willful ones as part of a

process. The plaintiff has not alleged that Kastenholz, Ratay or Naylor misused

any process (or used any process at all).

That leaves the Village of Elm Grove. The Wisconsin Supreme Court has

implied that abuse of process is an intentional tort. See Maniaci v. Marquette

University, 50 Wis. 2d 287, 302-303 (1971). The requirement that the

defendant commit a "willful act in the use of process" supports this inference;

an intentional tort requires "both an intent to do an act and an intent to cause injury by that act," Gouger v. Hardtke, 482 N.W.2d 84, 88 (Wis. 1992), and abuse of process requires a willful act and an attempt to achieve an unlawful end.

Under Wis. Stat. §893.80(4), "[n]o suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees . . . ." The defendants assert that the village is a "political corporation." Dkt. No. 28 at 22. That is not correct; the Wisconsin Supreme Court has held that a political corporation "is an entity created by the legislature that is authorized to implement enactments of the legislature." Rouse v. Theda Clark Med. Ctr., Inc., 302 Wis. 2d 358, 373 (Wis. 2007). But the Wisconsin Court of Appeals *has* concluded that "[m]unicipalities are immune from suit under WIS. STAT. §893.80(4)." Scalcucci v. Cnty. of Dane, Appeal No. 2020AP937, 2021 WL 5365896 (Table), *1 (Wis. Ct. App. Nov. 18, 2021).

Section 893.80(4) immunity protects the municipality from suits based on the intentional torts of their officers, officials, agents or employees. The plaintiff has referenced the citation issued by Officer Unger. If the issuance of that citation constituted an abuse of process (and the court is not finding that it did), the village is immune from suit for the officer's intentional tort of abuse of process. The plaintiff has alleged that the "village" instructed the fire department to investigate him, but it wasn't "the village"—it was, as he alleged

43

earlier in the complaint, Village Manager DeAngelis. If DeAnglis's instruction to the fire department constituted abuse of process (and the court is not finding that it did), the village is immune from suit for DeAngelis's intentional tort. The plaintiff has alleged that the "village" escalated the matter to terminating his employment. But he alleged that it was Selzer, the fire chief, who put him on administrative leave. He has alleged that it was the "fire department" that filed disciplinary charges with the police and fire commission. And he has alleged that the commission terminated his employment. Although the plaintiff does not always identify the specific officers, officials or employees, all of these acts were committed by individual officers, officials or employees of the village or of village departments. If each of these acts constituted abuse of process (and the court is not finding that they did), the village is immune from liability for those intentional torts.

Even if the village were not immune from suit for intentional torts committed by its officers, officials or employees, the complaint fails to allege sufficient facts to state a claim for abuse of process by the village. The plaintiff has alleged that the village acted with an ulterior motive when Officer Unger issued him the citation and when DeAngelis instructed the fire department to investigate him. Specifically, he alleges that the village's motive was to stop pursuing his complaints against the police officers. Dkt. No. 1 at ¶¶81-85. But as the Wisconsin Court of Appeals has explained, improper motive and bad intentions are not enough to state a claim for abuse of process. The plaintiff must allege that the defendant—in this case, the village—performed some act

44

that was not a proper part of the particular process (the process of issuing a citation, for example, or the process of conducting disciplinary proceedings against a volunteer fireman). The plaintiff has not identified any such act by the village (or any other defendant). Even if someone—Officer Unger or DeAngelis or Selzer or someone else—wanted to extort the plaintiff into dropping his complaints against the Elm Grove police officers, the plaintiff cannot state an abuse-of-process claim without an allegation that that someone performed a specific act that was not a proper part of the process he alleges that that person abused.

The court will grant the defendants' motion to dismiss Count III.

### 4. *Damages*

The defendants argued in their motion to dismiss that the plaintiff could not recover punitive damages any alleged constitutional violations asserted through §1983, citing City of Newport v. Facts Concerts, Inc., 453 U.S. 247, 271 (1981). Dkt. No. 28 at 22-23. They also argued that he could not recover punitive damages for any of his state law claims because of Wis. Stat. §893.80(3). Id. at 23.

The plaintiff's opposition brief addressed only his First Amendment retaliation claim. See dkt. no. 31 at 14. He argued that punitive damages may be awarded in a First Amendment retaliation claim "where the conduct involved reckless or callous indifference to his federally protected rights." Id. (citing Petties v. Dybas, Case No. 16-cv-7929, 2018 WL 3970148, *9 (N.D. Ill. Aug. 20, 2018)). He also argued that "'[u]nder Section 1983, punitive damages are

appropriate when a defendant acted wantonly and willfully or was motivated by ill-will or a desire to injure." Id. (quoting Petties, 2018 WL 3970148 at *9)). The plaintiff asserts that he alleged that the defendants acted maliciously intending to harm him because of his complaints about the police department officers. Id.

The defendants' reply did not directly address this issue. Instead, for reasons that are not clear, the defendants argue that the plaintiff "concede[d]" all their arguments about punitive damages. Dkt. No. 32 at 2-3.

The defendants are correct that municipalities are immune from punitive damages under 42 U.S.C. §1983. First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago, 988 F.3d 978, 985 n.3 (7th Cir. 2021) (citing Newport, 453 U.S. at 271)). The plaintiff's opposition brief did not address the argument that municipalities are immune from punitive damages in §1983 suits, but the court has dismissed the §1983 claim against the village because the complaint fails to state a Monell claim against the village. The court will dismiss the plaintiff's claims for punitive damages against the village.

The court has allowed the plaintiff to proceed on a §1983 First Amendment retaliation claim against DeAngelis. Punitive damages *are* available in suits against an individual state actor. See Kentucky v. Graham, 472 U.S. 159, 167 n.13 (1985); Smith v. Wade, 461 U.S. 30 (1983). A plaintiff may recover punitive damages in an individual capacity suit if the government official acted in bad faith. Hill v. Shelander, 924 F.2d 1370, 1373 (1991). But the allegations against DeAngelis—found in paragraphs 46-48 of the complaint—do not include any allegations that he acted in bad faith, or that he

acted callously or indifferently, or wantonly and recklessly. In the absence of any allegations about DeAngelis's state of mind, the court will dismiss the punitive damages claim against DeAngelis.

Wis. Stat. §893.80(3) states that no punitive damages are allowed or recoverable in suits under that subsection. The only state claim remaining is the plaintiff's Wis. Stat. §893.80(4) claim against the fire department, and §893.80(3) directly references volunteer fire departments. The court will dismiss the plaintiff's claim for punitive damages as to Count II.

### III. Conclusion

The court **DENIES** the defendants' motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Dkt. No. 27.

The court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). Dkt. No. 27.

The court **GRANTS** the defendants' motion to dismiss the Village of Elm Grove, Interim Fire Commissioner Kastenholz, Deputy Chief Ratay, Battalion Chief Naylor, the Village of Elm Grove Fire Department, the Elm Grove Police and Fire Commission, Commissioner Haugh, Commissioner Molter, Commissioner Kasprzak and Commissioner Moulas from Count I.

The court **GRANTS** the defendants' motion to dismiss the Village of Elm Grove and the Elm Grove Police and Fire Commission from Count II.

The court **GRANTS** the defendants' motion to dismiss Count III.

The court **GRANTS** the defendants' unopposed motion to dismiss Count IV.

The court **GRANTS** the defendants' motion to dismiss the plaintiff's punitive damages claims.

The court **DENIES** the defendants' motion to dismiss Village Manager David DeAngelis from Count I.

The court **DENIES** the defendants' motion to dismiss the Village of Elm Grove Fire Department from Count II.

The court **DISMISSES** defendants Village of Elm Grove, Kastenholz, Ratay, Naylor, the Elm Grove Police and Fire Commission, Haugh, Molter, Kasprzak and Moulas.

The court **ORDERS** that by the end of the day on **April 30, 2024**, the plaintiff must file an amended complaint reflecting the court's decision.

Dated in Milwaukee, Wisconsin this 22nd day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

48